J-S69004-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| CORA BARNES | : | |
| | : | |
| Appellant | : | No. 1525 EDA 2019 |

Appeal from the Judgment of Sentence Entered May 2, 2017
In the Court of Common Pleas of Bucks County Criminal Division at
No(s):  CP-09-CR-00000276-2017

BEFORE:   SHOGAN, J., KUNSELMAN, J., and COLINS, J.[*]

MEMORANDUM BY SHOGAN, J.:                    **FILED JANUARY 14, 2020**

Appellant, Cora Barnes, appeals *nunc pro tunc* from the judgment of sentence entered May 2, 2017, following entry of her guilty plea to one count each of theft by unlawful taking, theft by deception, receiving stolen property, forgery, and access device fraud by unauthorized user.[1]  We affirm.

The trial court summarized the procedural and factual history of this case as follows:

Factual History

The victims in this matter are Stanley and Virginia Beckett. Stanley Becket[t] was 91 years old at the time of the proceedings before this [c]ourt.  His wife, Virginia Beckett, was 88 years old. N.T. 4/19/17, at 13; N.T. 4/24/17 at 14.   Mr. Beckett has

---

[*] Retired Senior Judge assigned to the Superior Court.

[1]   18  Pa.C.S.  §§  3921(a),  3922(a)(1),  3925(a),  4101(a)(2),  and 4106(a)(1)(iv), respectively.

experienced significant hearing loss. N.T. 4/19/17, at 16, 17, 18; N.T. 5/2/17, at 2-3. Mrs. Beckett has significant memory issues and cannot walk without assistance. N.T. 4/19/17, at 18. [Appellant] was hired to assist Mr. Beckett in caring for his wife. N.T. 4/19/17, at 13; N.T. 4/24/17, at 14. It was agreed that [Appellant] would receive a weekly salary of $440. Mr. Beckett paid [Appellant] by personal check. Because Mr. Beckett has difficulty writing, it was his practice to sign a check each week and allow [Appellant] to fill out the remaining information, including the amount payable. Over a five-month period, from June 1, 2016[,] through November 2, 2016, [Appellant] misappropriated a total of $14,935.61 from Mr. and Mrs. Beckett. Specifically, [Appellant] forged Mr. Beckett's signature on checks and used the checks he did sign to withdraw funds that far exceeded her agreed[-]upon salary. [Appellant] also used Mr. and Mrs. Beckett's debit card to make unauthorized purchases from T-Mobile and Amazon. N.T. 4/24/17, at 13-14. When Mr. Beckett discovered that more than $14,000 was missing from his checking account, he contacted the police. After conducting her initial investigation, Officer Michelle Williamson of the Penndel Borough Police Department interviewed [Appellant]. During that interview, [Appellant] admitted to the allegations regarding the Beckett[s'] checking account stating that she committed the theft to pay for her children's legal fees and to post their bail. N.T. 4/24/17, at 14. She did not admit to the unauthorized use of the debit card. She stated that the debit card information was entered into her computer and that any purchases she had made using that card she thought she had removed. She stated that her grandchildren, who also used her computer, were responsible for any unauthorized purchases. N.T. 4/19/17, at 24.

Procedural History

On November 28, 2016, [Appellant] was charged with theft and related offenses. On January 11, 2017, the Commonwealth withdrew four of the nine charges. [Appellant] then waived the preliminary hearing and agreed to enter a guilty plea to the remaining charges, specifically Theft by Unlawful Taking, 18 Pa.C.S. § 3921(a), a felony of the third degree; Theft by Deception, 18 Pa.C.S. § 3922(a)(1), a felony of the third degree; Receiving Stolen Property, 18 Pa.C.S. § 3925(a), a felony of the third degree; Forgery (unauthorized act in writing), 18 Pa.C.S. § 4101(a)(2), a felony of the third degree; and Access Device Fraud

- 2 -

(use unauthorized), 18 Pa.C.S. § 4106(a)(1)(iv), a felony of the third degree.

On Wednesday, April 19, 2017, this [c]ourt refused to accept [Appellant's] proffered guilty plea due to her failure to acknowledge her guilt of the crimes charged.

\* \* \*

After rejecting the guilty plea, this [c]ourt directed that the matter proceed to trial and that the necessary arrangements be made to begin jury selection. N.T. 4/19/17, at 26. When court reconvened, [Appellant] failed to appear. A recess was taken to allow counsel to attempt to locate [Appellant]. Following that recess, counsel for [Appellant] advised the [c]ourt that he was unable to locate [Appellant] and that she was not responding to his telephone calls. A bench warrant was therefore issued for her arrest. Because [Appellant] willfully absented herself from the proceedings and because the case needed to go forward to accommodate the Commonwealth's 91-year-old victim, this Court ruled that [Appellant] could be tried *in abstentia*. So as to allow [Appellant] the opportunity to surrender, trial was set to commence on Monday, April 24, 2017. Defense counsel was instructed to advise [Appellant] to surrender herself to the nearest police department without delay if he had contact with her in the interim. NT. 4/19/17, at 28-31. [Appellant] did not surrender herself on the warrant between Wednesday, April 19th, and Monday, April 24th, but did appear in court on the morning trial was scheduled to commence.

On that date, [Appellant] entered a guilty plea. During the course of the guilty plea colloquy, [Appellant] admitted that the facts summarized above were substantially correct. Specifically, she admitted that she stole the money by increasing the amounts payable on her salary checks and that she used Mr. and Mrs. Beckett's debit card without their authorization to buy a computer on Amazon. N.T. 4/24/17, at 15-16.

[Appellant] testified that she stole the $14,935.61 in order to post bail for her children and to purchase personal items for herself and that she had no money to pay restitution. N.T., 4/24/17, at 18-19, 30. As a result of this testimony, the [c]ourt inquired into that status of the bail money and was advised by [Appellant] that the money was still posted. After eliciting

- 3 -

information as to the names of the three children involved, the cases in which bail was posted and the jurisdictions in which the bail was posted, this [c]ourt deferred sentence to the following day in order for [Appellant] and the Commonwealth to arrange to secure those funds for purposes of restitution.[1]  N.T. 4/24/17, at 20-22, 27-31.  On April 25, 2017, sentencing was continued to May 2, 2017.

  [1] [Appellant] testified that the money was posted in various jurisdictions in New Jersey and that her children were ages thirty-six, thirty-two and twenty-eight[,] respectively.  N.T. 4/24/17, at 20-22, 27-31.

On May 2, 2017, the attorney for the Commonwealth advised this [c]ourt that, contrary to [Appellant's] representations to this [c]ourt that she had personally posted bail for three of her children, a records check established that [Appellant's] children either did not have any criminal charges pending at the time the thefts in the instant case were committed or had only miscellaneous matters pending which did not require the posting of monetary bail.  N.T. 5/2/17, at 3-5.  In response, [Appellant] asserted that, contrary to her previous testimony, she did not personally post bail but rather gave the money to her children based on their representations that they needed money for bail.  N.T. 5/2/17, at 7-9, 13-14.  As of the date of sentencing, [Appellant] had not returned any of the victims' money.  N.T. 5/2/17, at 10.

[Appellant] was sentenced to three and [one]-half to seven years on count 1-Theft by Unlawful Taking.  [Appellant] was determined to be an "eligible offender" under the Recidivism Risk Reduction Incentive (RRRI) Act and therefore received a[n] RRRI minimum sentence of thirty-five months.  61 Pa.C.S. §§ 4503, 4505.  As to count 4-Forgery, [Appellant] was sentence[d] to a seven-year term of probation to run consecutive to the sentence imposed on count 1.  As a condition of the sentence, [Appellant] was ordered to pay restitution to Stanley and Virginia Beckett in the amount of $14,935.61.  No sentence was imposed on [c]ount 2-Theft by Deception, [c]ount 3-Receiving Stolen Property, and [c]ount 5-Access Device Fraud.

On May 8, 2017, [Appellant] filed motion for reconsideration of sentence.  A hearing was scheduled for July 7, 2017.  That

hearing was continued at [Appellant's] request to allow her to make restitution payments.

\* \* \*

By order dated September 8, 2017, the Defendant's motion for reconsideration of sentence was denied. As of that date, no restitution had been paid.

No appeal was taken from the judgment of sentence.

On June 7, 2018, [Appellant] filed a *pro se* Motion for Modification of Sentence. This [c]ourt deemed [Appellant's] untimely request for modification of sentence to be a request for relief pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S. § 9541 et seq. By order dated June 23, 2018, counsel was appointed to represent [Appellant] in the PCRA proceedings. On December 4, 2018, counsel filed an amended PCRA petition. On January 3, 2019, the Commonwealth filed its response to the amended PCRA petition. On January 4, 2019, this [c]ourt entered an agreed order granting [Appellant's] request for relief and reinstating [Appellant's] right to file a motion to reconsider sentence and her right to file a direct appeal.

On January 14, 2019, [Appellant] filed a Motion for Reconsideration of Sentence. On April 24, 2019, a hearing was held on [Appellant's] motion to modify sentence. On that same date, [Appellant's] motion was denied.

On May 23, 2019, [Appellant] filed a timely Notice of Appeal. By order dated May 23, 2019, [Appellant] was directed to file a Concise Statement of Matters Complained of on Appeal (Statement) pursuant to Pa.R.A.P. 1925(b).

Trial Court Opinion, 8/28/19, at 1–2, 4–8. Both Appellant and the trial court complied with Pa.R.A.P. 1925.

Appellant raises the following single issue on appeal:

A. Did the trial court abuse its discretion in imposing a statutory maximum sentence of three[] and one-half (3 1/2) to seven (7) years, which exceeded the aggravated range of sentences for a 55-year old appellant who had a zero prior record

score, had no history of violence and had not committed a violent offense in the instant crime, where the appellant cooperated with the police and accepted responsibility for her crimes, and had made efforts to pay back the victims while incarcerated? Moreover, did the court abuse its discretion in ignoring the other mitigation presented at sentencing to impose this clearly excessive sentence?

Appellant's Brief at 4.

Appellant's issue relates to the discretionary aspects of her sentence. It is well settled that a challenge to the discretionary aspects of a sentence is a petition for permission to appeal, as the right to pursue such a claim is not absolute. *Commonwealth v. Treadway*, 104 A.3d 597, 599 (Pa. Super. 2014). "An appellant must satisfy a four-part test to invoke this Court's jurisdiction when challenging the discretionary aspects of a sentence," by (1) preserving the issue in the court below, (2) filing a timely notice of appeal, (3) including a Rule 2119(f) statement, and (4) raising a substantial question for our review. *Commonwealth v. Tejada*, 107 A.3d 788, 797 (Pa. Super. 2015) (citation omitted); *Commonwealth v. Austin*, 66 A.3d 798, 808 (Pa. Super. 2013).

In the instant case, Appellant filed a timely appeal, the issue was properly preserved in a post-sentence motion, and Appellant's brief contains a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of a sentence pursuant to Pa.R.A.P. 2119(f). Accordingly, we must determine whether Appellant has raised a substantial question that the sentence is not appropriate under 42 Pa.C.S.

§ 9781(b).  *Commonwealth v. Moury*, 992 A.2d 162, 170 (Pa. Super. 2010).

The determination of whether there is a substantial question is made on a case-by-case basis, and this Court will allow the appeal only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code, or (2) contrary to the fundamental norms which underlie the sentencing process.  *Commonwealth v. Caldwell*, 117 A.3d 763, 768 (Pa. Super. 2015).  "Our inquiry must focus on the reasons for which the appeal is sought, in contrast to the facts underlying the appeal, which are necessary only to decide the appeal on the merits."  *Commonwealth v. Knox*, 165 A.3d 925, 929 (Pa. Super. 2017) (quoting *Commonwealth v. Tirado*, 870 A.2d 362, 365 (Pa. Super. 2005)).

In her Rule 2119 statement, Appellant asserts the trial court erred in imposing a sentence beyond the aggravated range of the Sentencing Guidelines without specifying the factors that prompted the upward departure. Appellant's Brief at 10.  This Court has held that claims of a sentencing court imposing a sentence outside of the standard guidelines without stating adequate reasons on the record presents a substantial question. *Commonwealth v. Antidormi*, 84 A.3d 736, 759 (Pa. Super. 2014); *see also Commonwealth v. Gooding*, 818 A.2d 546, 553 (Pa. Super. 2003) (substantial question raised where the appellant asserts the sentencing court

failed to state reasons on the record to justify an upward departure from the Sentencing Guidelines).  Thus, we conclude that Appellant's claim presents a substantial question for our review, and we review the merits of Appellant's challenge.

Our standard of review follows:

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion.  In order to establish that the sentencing court abused its discretion, the defendant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision. The rationale behind such broad discretion and the concomitantly deferential standard of appellate review is that the sentencing court is in the best position to determine the proper penalty for a particular offense based upon an evaluation of the individual circumstances before it.  To determine whether the trial court made the proper considerations during sentencing, an appellate court must, of necessity, review all of the judge's comments.

*Commonwealth v. Luketic*, 162 A.3d 1149, 1163 (Pa. Super. 2017).

Our careful review of the record reveals that the trial court did not abuse its discretion in sentencing Appellant.  The trial court acknowledged on the record the applicable provisions of the Sentencing Guidelines and stated the reasons why it was imposing a sentence beyond the aggravated range of the Guidelines.  N.T. (Sentencing), 5/2/17, at 29–33.  We note that sentencing courts are not bound by the Sentencing Guidelines because they are merely advisory.  *Commonwealth v. Sheller*, 961 A.2d 187, 190 (Pa. Super. 2008) (citation omitted).  The sentencing court "may depart from the [G]uidelines if

- 8 -

necessary, to fashion a sentence which takes into account the protection of the public, the rehabilitative needs of the defendant, and the gravity of the particular offense as it relates to the impact on the life of the victim and the community." *Id.* (internal quotation marks and citation omitted). Further, while Appellant asserted in her statement of the issue that the trial court abused its discretion by failing to consider mitigating factors presented at sentencing, she fails to identify what those factors are.

The trial court considered all necessary and relevant factors relating to Appellant's personal circumstances and characteristics. Moreover,

> [t]he sentencing court is in a superior position to "review the defendant's character, defiance or indifference, and the overall effect and nature of the crime." *Commonwealth v. Marts*, 889 A.2d 608, 613 (Pa. Super. 2005) (citation omitted). "Simply stated, the sentencing court sentences flesh-and-blood defendants and the nuances of sentencing decisions are difficult to gauge from the cold transcript used upon appellate review. Moreover, the sentencing court enjoys an institutional advantage to appellate review, bringing to its decisions an expertise, experience, and judgment that should not be lightly disturbed." *Commonwealth v. Walls*, 592 Pa. 557, 926 A.2d 957, 961 (2007).

*Commonwealth v. Conte*, 198 A.3d 1169, 1177 (Pa. Super. 2018), *appeal denied*, 206 A.3d 1029 (Pa. 2019). Upon review of the parties' briefs, the certified record, and our standard of review, we conclude that the trial court properly disposed of Appellant's issue in its Pa.R.A.P. 1925(a) opinion. The trial court imposed a sentence outside of the guideline ranges because Appellant abused the ninety-one-year-old victim's trust, committed the crimes over a period of time, lied to the court, failed to begin making restitution until

after her incarceration, and did not show remorse or accept responsibility for her actions. N.T. (Sentencing), 5/2/17, at 29–33; Trial Court Opinion, 8/28/19, at 10–12. The trial court was not required to delineate each specific factor that called for a sentence outside of the guideline range because the record reveals that the court carefully considered the facts of the crime and Appellant's character. **See Commonwealth v. Crump**, 995 A.2d 1280, 1283 (Pa. Super. 2010) ("A sentencing court need not undertake a lengthy discourse for its reasons for imposing sentence or specifically reference the statute in question, but the record as a whole must reflect the sentencing court's consideration of the facts of the crime and the character of the offender.").

We affirm the judgment of sentence on the basis of the trial court's August 28, 2019 Pa.R.A.P. 1925(a) opinion. In the event of future proceedings, the parties are directed to attach a copy of the trial court's opinion to this memorandum.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/14/20

- 10 -

IN THE COURT OF COMMON PLEAS OF BUCKS COUNTY, PENNSYLVANIA
CRIMINAL DIVISION

COMMONWEALTH OF PENNSYLVANIA :   No.   CP-09-CR-0000276-2017
[1525 EDA 2019]

v.          :

CORA BARNES          :

## OPINION

The Defendant, Cora Barnes, has filed an appeal from the judgment of sentence entered in the above-captioned case on May 2, 2017.

Factual History

The victims in this matter are Stanley and Virginia Beckett. Stanley Beckett was 91 years old at the time of the proceedings before this Court. His wife, Virginia Beckett, was 88 years old. N.T. 4/19/17, at 13; N.T. 4/24/17 at 14. Mr. Beckett has experienced significant hearing loss. N.T. 4/19/17, at 16, 17, 18; N.T. 5/2/17, at 2-3. Mrs. Beckett has significant memory issues and cannot walk without assistance. N.T. 4/19/17, at 18. The Defendant was hired to assist Mr. Beckett in caring for his wife. N.T. 4/19/17, at 13; N.T. 4/24/17, at 14. It was agreed that the Defendant would receive a weekly salary of $440. Mr. Beckett paid the Defendant by personal check. Because Mr. Beckett has difficulty writing, it was his practice to sign a check each week and allow the Defendant to fill out the remaining information, including the amount payable. Over a five-month period, from June 1, 2016 through November 2, 2016, the Defendant misappropriated a total of $14,935.61 from Mr. and Mrs. Beckett. Specifically, the Defendant forged Mr. Beckett's signature on checks and used the checks he did sign to withdraw funds that far exceeded her agreed upon salary. The Defendant also used Mr. and Mrs. Beckett's debit card to make unauthorized

purchases from T-Mobile and Amazon. N.T. 4/24/17, at 13-14. When Mr. Beckett discovered that more than $14,000 was missing from his checking account, he contacted the police. After conducting her initial investigation, Officer Michelle Williamson of the Penndel Borough Police Department interviewed the Defendant. During that interview, the Defendant admitted to the allegations regarding the Beckett's checking account stating that she committed the theft to pay for her children's legal fees and to post their bail. N.T. 4/24/17, at 14. She did not admit to the unauthorized use of the debit card. She stated that the debit card information was entered into her computer and that any purchases she had made using that card she thought she had removed. She stated that her grandchildren, who also used her computer, were responsible for any unauthorized purchases. N.T. 4/19/17, at 24.

## Procedural History

On November 28, 2016, the Defendant was charged with theft and related offenses. On January 11, 2017, the Commonwealth withdrew four of the nine charges. The Defendant then waived the preliminary hearing and agreed to enter a guilty plea to the remaining charges, specifically Theft by Unlawful Taking, 18 Pa.C.S. §3921(a), a felony of the third degree; Theft by Deception, 18 Pa.C.S. §3922(a)(1), a felony of the third degree; Receiving Stolen Property, 18 Pa.C.S. §3925(a), a felony of the third degree; Forgery (unauthorized act in writing), 18 Pa.C.S. §4101(a)(2), a felony of the third degree; and Access Device Fraud (use unauthorized), 18 Pa.C.S. §4106(a)(1)(iv), a felony of the third degree.

On Wednesday, April 19, 2017, this Court refused to accept the Defendant's proffered guilty plea due to her failure to acknowledge her guilt of the crimes charged. During the course of this proceeding, the Defendant testified as follows:

2

BY [DEFENSE COUNSEL]

Q. Now, you indicated or there was indication that at some point there was an arrangement -- you understood that you could write money into the checks based on the agreement with the Becketts; correct?

A. Yes. With the agreement with both of them, yes.

Q. And you added money for purposes that involved -- your son was in jail?

A. My son was in jail and my daughter was in jail. But that didn't have nothing to do with me writing checks for them. That came out of my own private money.

THE COURT: What were you doing with the money, then? Why did you take the $14,000? That is a lot of money over a short period of time.

THE WITNESS: I didn't take $14,000. What I did with my money, I paid bills and stuff. At the time that -- 3:45 in the morning the police officer called me and told me my son was arrested. So what I did was my daughter took me over there and I bailed him out. Two days later my daughter went for DUI or whatever they called it. She was caught driving under the influence. And I had to go -- they took me back over there for her, and I signed the bail papers.

THE COURT: I am not following you. How many checks did you alter or how many times did you use the credit card?

THE WITNESS: I only used the credit card to order her a wheelchair, which Mr. Beckett gave me for like two, three minutes, and to order her some memory foam slippers. And I -- he was standing right there when I ordered it over the phone. And I gave him his card back. I asked him as the lady asked me on the phone you buy one, you get one free. I asked him did he want a pair. He said no. I told the lady no. When the shoes came, there was a --

THE COURT: So you are saying you didn't unlawfully use their credit card?

[DEFENSE COUNSEL]: Did your children use it?

3

THE WITNESS: No. I didn't use no credit card. Now, only way, like I —

THE COURT: Let's take this one at a time. Did you take $14,435.61?

THE WITNESS: Like I explained to Michelle, after I used it, I hit remove. The only way that -- like I explained to her, it didn't remove when I hit remove. And my grandchildren asked me could they use my laptop. And I said if that happened and if they purchased something, I would gladly pay it back. That's what I told Michelle. I said but as far as my knowledge, I hit remove.

[DEFENSE COUNSEL]: Michelle is the officer who arrested —

THE WITNESS: Yeah.

THE COURT: What did you steal? You are telling me you didn't steal anything? You haven't told me you stole anything yet.

THE WITNESS: This is — whatever they said I stole, I agree to it.

THE COURT: Tell me what you stole.

THE WITNESS: I said if my grandchildren did it, I would lawfully pay it back.

THE COURT: You are saying your grandchildren stole the money?

THE WITNESS: I ordered it on my laptop. I hit remove.

THE COURT: She is not admitting guilt. I am not accepting it.

N.T. 4/19/17, at 22-25.

After rejecting the guilty plea, this Court directed that the matter proceed to trial and that the necessary arrangements be made to begin jury selection. N.T. 4/19/17, at 26. When court

4

reconvened, the Defendant failed to appear. A recess was taken to allow counsel to attempt to locate the Defendant. Following that recess, counsel for the Defendant advised the Court that he was unable to locate the Defendant and that she was not responding to his telephone calls. A bench warrant was therefore issued for her arrest. Because the Defendant willfully absented herself from the proceedings and because the case needed to go forward to accommodate the Commonwealth's 91-year-old victim, this Court ruled that the Defendant could be tried *in abstentia*. So as to allow the Defendant the opportunity to surrender, trial was set to commence on Monday, April 24, 2017. Defense counsel was instructed to advise the Defendant to surrender herself to the nearest police department without delay if he had contact with her in the interim. NT. 4/19/17, at 28-31. The Defendant did not surrender herself on the warrant between Wednesday, April 19th, and Monday, April 24th, but did appear in court on the morning trial was scheduled to commence.

On that date, the Defendant entered a guilty plea. During the course of the guilty plea colloquy, the Defendant admitted that the facts summarized above were substantially correct. Specifically, she admitted that she stole the money by increasing the amounts payable on her salary checks and that she used Mr. and Mrs. Beckett's debit card without their authorization to buy a computer on Amazon. N.T. 4/24/17, at 15-16.

The Defendant testified that she stole the $14,935.61 in order to post bail for her children and to purchase personal items for herself and that she had no money to pay restitution. N.T. 4/24/17, at 18-19, 30. As a result of this testimony, the Court inquired into that status of the bail money and was advised by the Defendant that the money was still posted. After eliciting information as to the names of the three children involved, the cases in which bail was posted and the jurisdictions in which the bail was posted, this Court deferred sentence to the following day in order for the Defendant and the Commonwealth to arrange to secure those funds for purposes of

5

restitution.[1] N.T. 4/24/17, at 20-22, 27-31. On April 25, 2017, sentencing was continued to May 2, 2017.

On May 2, 2017, the attorney for the Commonwealth advised this Court that, contrary to the Defendant's representations to this Court that she had personally posted bail for three of her children, a records check established that the Defendant's children either did not have any criminal charges pending at the time the thefts in the instant case were committed or had only miscellaneous matters pending which did not require the posting of monetary bail. N.T. 5/2/17, at 3-5. In response, the Defendant asserted that, contrary to her previous testimony, she did not personally post bail but rather gave the money to her children based on their representations that they needed money for bail. N.T. 5/2/17, at 7-9, 13-14. As of the date of sentencing, the Defendant had not returned any of the victims' money. N.T. 5/2/17, at 10.

The Defendant was sentenced to three and a-half to seven years on count 1 – Theft by Unlawful Taking. The Defendant was determined to be an "eligible offender" under the Recidivism Risk Reduction Incentive (RRRI) Act and therefore received a RRRI minimum sentence of thirty-five months. 61 Pa.C.S. §§4503, 4505. As to count 4 – Forgery, the Defendant was sentence to a seven-year term of probation to run consecutive to the sentence imposed on count 1. As a condition of the sentence, the Defendant was ordered to pay restitution to Stanley and Virginia Beckett in the amount of $14,935.61. No sentence was imposed on Count 2 – Theft by Deception, Count 3 – Receiving Stolen Property, and Count 5 – Access Device Fraud.

On May 8, 2017, the Defendant filed motion for reconsideration of sentence. A hearing was scheduled for July 7, 2017. That hearing was continued at the Defendant's request to allow her to make restitution payments.

---

[1] The Defendant testified that the money was posted in various jurisdictions in New Jersey and that her children were ages thirty-six, thirty-two and twenty-eight respectively. N.T. 4/24/17, at 20-22, 27-31.

6

On August 8, 2017, the Commonwealth filed a Motion for Amended Restitution and Denial of Defense Motion to Reconsider. With regard to the restitution order, the Commonwealth did not seek to alter the amount of restitution owed but rather sought to allocate the restitution to be paid between Mr. Beckett and the Victim Compensation Assistance Program. By Order dated August 14, 2017, the Commonwealth's motion to amend restitution order was granted. The restitution previously ordered was allocated as follows: $11,624 to Stanley Beckett and $3,311 to Victim's Compensation Program.

By order dated September 8, 2017, the Defendant's motion for reconsideration of sentence was denied. As of that date, no restitution had been paid.

No appeal was taken from the judgment of sentence.

On June 7, 2018, the Defendant filed a *pro se* Motion for Modification of Sentence. This Court deemed the Defendant's untimely request for modification of sentence to be a request for relief pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S. §9541 *et seq.* By order dated June 23, 2018, counsel was appointed to represent the Defendant in the PCRA proceedings. On December 4, 2018, counsel filed an amended PCRA petition. On January 3, 2019, the Commonwealth filed its response to the amended PCRA petition. On January 4, 2019, this Court entered an agreed order granting the Defendant's request for relief and reinstating the Defendant's right to file a motion to reconsider sentence and her right to file a direct appeal.

On January 14, 2019, the Defendant filed a Motion for Reconsideration of Sentence. On April 24, 2019, a hearing was held on the Defendant's motion to modify sentence. On that same date, the Defendant's motion was denied.

7

On May 23, 2019, the Defendant filed a timely Notice of Appeal. By order dated May 23, 2019, the Defendant was directed to file a Concise Statement of Matters Complained of on Appeal (Statement) pursuant to Pa.R.A.P. 1925(b). On June 13, 2019, the Defendant filed her Statement.

Analysis

The sole issue raised on appeal relates to the discretionary aspects of sentence. The Defendant asserts:

> The trial court abused its discretion in imposed a statutory maximum sentence of three and one-half (3 ½) to seven (7) years, which exceeded the aggravated range of sentences for a 55 year old [Defendant] who had a zero prior record score, had no history of violence and had not committed a violent offense in the instant crime, where the [Defendant] cooperated with police accepted responsibility for her crimes, and had made efforts to pay back the victims while incarcerated. Moreover, the court abused its discretion in ignoring the other mitigation presented to impose this clearly excessive sentence.

Statement, ¶ 1.

The standards for evaluating challenges to the discretionary aspects of sentence are well settled. "Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion." Commonwealth v. Bullock, 170 A.3d 1109, 1123 (Pa.Super.2017) (quotation marks and citations omitted). A mere "error in judgment" does not constitute an abuse of discretion. Id. "Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision." Id.

The Sentencing Code requires that, when imposing a sentence, a court must consider the protection of the public, the gravity of the offense as it relates to the impact on the victim and the community, the defendant's rehabilitative needs and the sentencing guidelines. 42 Pa.C.S. §

8

9721(b). A sentencing court must also "make as a part of the record, and disclose in open court at the time of sentencing, a statement of the reason or reasons for the sentence imposed." Id.

Although the sentencing guidelines must be considered, the guidelines "have no binding effect, create no presumption in sentencing, and do not predominate over other sentencing factors – they are advisory guideposts that are valuable, may provide an essential starting point, and that must be respected and considered; they recommend, however, rather than require a particular sentence." Commonwealth v. Walls, 592 Pa. 557, 926 A.2d 957, 964-965 (2007). Since the sentencing guidelines are merely advisory, "[i]f the court finds it appropriate to sentence outside the guidelines, of course it may do so as long as it places its reasons for the deviation on the record." Commonwealth v. Dutter, 617 A.2d 330, 333 (Pa.Super.1992) quoting Commonwealth v. Cornish, 589 A.2d 718, 721 (Pa.Super.1991). Moreover, although the record as a whole must reflect due consideration of the statutory factors, a sentencing court "is not required to parrot the words of the Sentencing Code, stating every factor that must be considered under 9721(b)." Commonwealth v. Bullock, 170 A.3d at 1126 (quotation marks and citation omitted).

Where the sentence imposed exceeds the sentencing guidelines, the sentence must be affirmed unless an appellate court finds "the case involves circumstances where the application of the guidelines would be *unreasonable*." 42 Pa.C.S. § 9781(c)(3) (emphasis added). Although the Sentencing Code does not define the term "unreasonable," the Supreme Court has stated,

> a sentence may be unreasonable if the appellate court finds that the sentence was imposed without express or implicit consideration by the sentencing court of the general standards applicable to sentencing found in Section 9721, i.e., the protection of the public; the gravity of the offense in relation to the impact on the victim and the community; and the rehabilitative needs of the defendant. 42 Pa.C.S. § 9721(b).

9

<u>Commonwealth v. Walls</u>, 926 A.2d at 964 (2007). In establishing this standard, the Court stated that "even though the unreasonableness inquiry lacks precise boundaries, we are confident that rejection of a sentencing court's imposition of sentence on unreasonableness grounds would occur infrequently, whether the sentence is above or below the guideline ranges." <u>Id.</u>

The sentencing guidelines applicable in the instant case are as follows:

> Theft by Unlawful Taking: standard – RS to 9 months; aggravated – 12 months;
>
> Theft by Deception: standard – RS to 9 months; aggravated – 12 months;
>
> Forgery: standard – RS to 1 month; aggravated – 4 months; and
>
> Access Device Fraud: standard – RS to 9 months; aggravated – 12 months.

In imposing sentence, this Court considered the sentencing guidelines and determined that the facts and circumstances of the criminal offenses, the impact of the crimes on the victims and the history, character and rehabilitative needs of the Defendant called for a sentence that exceeded the aggravated range of the sentencing guidelines. In making this determination, this Court relied on a number of factors first and foremost of which was the fact that the Defendant did not commit one theft but rather stole from the victims on a weekly basis for a period of five months before the thefts were finally discovered. In addition to committing numerous thefts, the Defendant repeatedly committed the separate and distinct crimes of forgery and access device fraud. N.T. 5/2/17, at 30, 33. Another significant factor was the fact that the Defendant was being paid to provide care, protection and support to Mrs. Beckett at the time that she chose to victimize her and her husband. In committing these crimes, she violated that position of trust. N.T. 5/2/17, at 31. This Court also considered the fact that that the Defendant chose to victimize individuals who were particularly vulnerable due to their age, medical condition and limited financial resources. N.T.

10

5/2/17, at 30, 32. Finally, this Court noted that the Defendant showed no remorse for her conduct. She made no attempt to reimburse the victims and offered no explanation as to what she did with the proceeds of her crimes. N.T. 5/2/17, at 33.

Given the repeated and systematic nature of the Defendant's criminal conduct, this Court found her lack of prior criminal convictions to be of little weight. This Court also found the Defendant's assertion that she "accepted responsibility" to be disingenuous given the fact that throughout these proceedings the Defendant persisted in placing the blame on others. She blamed her grandchildren for her use of the victims' debit card and attempted to use her children to explain her criminal conduct. Given the nature of her crimes and the impact her crimes had on the victims, the fact that the crimes are "nonviolent" is of little import. Finally, the fact that she made some restitution payments after she was incarcerated does not demonstrate any real attempt to acknowledge the harm she has caused or any real desire to make reparations. It only serves to demonstrate that she will live up to her responsibilities only when forced to do so or when it is otherwise is in her interest to do so.

In imposing sentence, this Court considered all of the factors set forth in the Sentencing Code including the protection of the public, the gravity of the offense, the history, character, condition and rehabilitative needs of the Defendant and the sentencing guidelines. The fact that this Court did not weigh the factors as the Defendant might have wished is not sufficient to support a claim for appellate relief. Commonwealth v. Zirkle, 107 A.3d 127, 133 (Pa.Super.2014) ("[W]e have held that a claim that a court did not weigh the factors as an appellant wishes does not raise a substantial question."). This Court decision to deviate from the sentencing guidelines was based on the evidence presented without partiality, prejudice, bias or ill will and the reasons for the

11

sentence were placed on the record as required. There is therefore no basis to conclude that the sentence imposed constituted an abuse of discretion or was otherwise "unreasonable."

Conclusion

For the reasons set forth above, this Court's finds the Defendant's claims to be without merit.

BY THE COURT:

8-28-19
Date

DIANE E. GIBBONS, J.

12